

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-1997

# United States v. Bell

Precedential or Non-Precedential:

Docket 96-7654

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Bell" (1997). *1997 Decisions*. Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 22, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7654

UNITED STATES OF AMERICA,

v.

ROBERTA RONIQUE BELL,
Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 95-163)

Argued: April 15, 1997

Before: GREENBERG, ALITO, and SEITZ, Circuit Judges

(Opinion Filed: May 22, 1997)

RICHARD K. RENN (Argued)
SNYDER & RENN
149 East Market Street
York, PA 17401

 Attorney for Appellant

DAVID M. BARASCH
UNITED STATES ATTORNEY

GORDON A.D. ZUBROD (Argued)
Assistant U.S. Attorney
P.O. Box 11754
Harrisburg, PA 17108

 Attorneys for Appellee

**OPINION OF THE COURT**

ALITO, <u>Circuit Judge</u>:

Appellant Roberta Ronique Bell was convicted following a jury trial of conspiracy, in violation of 18 U.S.C. § 371; murder of a witness, in violation of 18 U.S.C. § 1512(a)(1)(A) and (C); use of physical force and threats against a witness, in violation of 18 U.S.C. § 1512(b)(1), (2), and (3); and use of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1). She was sentenced to life imprisonment. These charges all relate to the killing of Doreen Proctor, who had been acting as an informant for the Tri-County Drug Task Force. Before Bell was indicted on these federal charges in June 1995, she had been acquitted in the Court of Common Pleas for Adams County of murder and witness intimidation charges arising out of the same events.

Bell's principal argument in this appeal is that her convictions on the witness tampering charges must be reversed because there was insufficient evidence that she intended to interfere with a <u>federal</u> proceeding or to prevent the communication of information to <u>federal</u> law enforcement officers. We hold that the jury was entitled to conclude (1) that Bell intended to prevent communications by Proctor to law enforcement officers and (2) that under <u>United States v. Stansfield</u>, 101 F.3d 909 (3d Cir. 1996), at least one of those communications would have been to a federal officer. Accordingly, we affirm.

I.

Doreen Proctor was an informant for the Tri-County Drug Task Force ("the Task Force"), which was comprised of local, state, and federal investigators operating in Cumberland, Dauphin, and Franklin Counties in Pennsylvania. The Task Force had developed federal as well as state criminal cases. Based on an investigation by the Task Force in which Proctor had provided information, David Tyler (who was Bell's boyfriend and colleague in the

2

drug business) was on trial for drug offenses in state court. Proctor was scheduled to testify against Tyler on April 21, 1992, in the Court of Common Pleas for Cumberland County. In the early morning of April 21, at the direction of David Tyler, Bell and several others kidnapped Proctor, took her to an isolated location in Adams County, tortured her, and killed her. Bell drove Proctor to the place where she was killed, and fired the first shot, into Proctor's chest. Willie Tyler, David Tyler's brother, then shot Proctor in the head.

Several of Bell's co-conspirators were convicted in state court of murder and/or witness intimidation. Bell, however, was acquitted in April 1993. Federal authorities then began their own investigation into Proctor's murder, which culminated in the convictions that are the subject of this appeal.[1]

Before trial, Bell moved to dismiss the indictment on double jeopardy and related grounds. The district court denied this motion in September 1995. Following trial, Bell moved for judgment of acquittal or a new trial, renewing her double jeopardy argument and contending that there was insufficient evidence to sustain her convictions on the witness tampering charges because Proctor was not a federal witness. In addition to challenging the sufficiency of the evidence, Bell contended that the court erred in its charge to the jury on the issue of her intent to interfere with a federal proceeding or investigation. She also advanced the related argument that without a connection between Proctor and a federal proceeding or a federal investigation, the court lacked jurisdiction. The court denied this motion in a memorandum opinion filed in June 1996. At her sentencing hearing, Bell argued that it was error to use the first-degree murder guideline in computing her sentence on the 18 U.S.C. § 1512(a) intimidation count

_____

1. Willie Tyler is the only co-conspirator of Bell's to have been similarly prosecuted in federal court after the state prosecution. He was acquitted of murder and convicted of witness intimidation in the state trial, and served two years in prison. He was then convicted of the same offenses as Bell following a trial in the Middle District of Pennsylvania (No. 1:CR-96-106).

(as the pre-sentence report recommended) because the jury never determined that Bell committed first-degree murder. The court rejected this argument. (App. 21A-30A)

On appeal, Bell raises these same contentions. In evaluating Bell's sufficiency challenge, we must view the evidence in the light most favorable to the government (the verdict-winner) and ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Price, 13 F.3d 711, 731 (3d Cir. 1994). Since the remainder of Bell's contentions pose questions of law, our review as to them is plenary.

II.

Subsection (a)(1) of 18 U.S.C. § 1512 ("Tampering with a witness, victim, or an informant") makes it unlawful to kill or attempt to kill another person "with intent to -- (A) prevent the attendance or testimony of any person in an official proceeding; [or] (C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ." Subsection (b) of 18 U.S.C. § 1512 prohibits the knowing use of intimidation, physical force, threats, and corrupt persuasion to accomplish these ends.

Title 18 U.S.C. § 1515(a)(1) defines an "official proceeding" as a federal proceeding, whether before a court, a grand jury, Congress, or a government agency. Similarly, 18 U.S.C. § 1515(a)(4) defines a "law enforcement officer" as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government . . . ." While the statute thus limits its reach to tampering that affects a federal proceeding or investigation, it expressly does not require that the defendant know or intend anything with respect to this federal character. Title 18 U.S.C. § 1512(f) provides: "no state of mind need be proved with respect to the circumstance -- (1) that the official proceeding before a judge [or] court . . . is before a judge or court of the United States . . . or (2) that the . . . law enforcement officer is an

4

officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government . . . ."

A. In the district court's view, the government was required to prove only that "the Defendant intended to interfere with a proceeding (that happened to be a federal proceeding) or interfere with communication to a law enforcement officer (who happened to be a federal law enforcement officer)." Dist. Ct. Op. at 7. If the government had presented evidence that it was contemplated that Proctor would testify in a federal proceeding, the jury could easily have inferred that at least one of the proceedings with which Bell intended to interfere would have been federal. But there was no federal proceeding contemplated at the time of Proctor's murder.[2] Similarly, if the government had presented evidence that at the time of her murder Proctor was cooperating in an ongoing federal investigation, the jury could easily have inferred that at least one of the law-enforcement-officer communications that Bell intended to prevent would have been with a federal officer. But, while federal officers were involved in the Task Force investigation, there is no evidence that Proctor had been providing information to a federal officer or to an officer authorized to act on behalf of the federal government.

Accordingly, in this case, as in United States v. Stansfield, 101 F.3d 909 (3d Cir. 1996), we must rely on circumstantial evidence to decide whether the jury could have concluded that at least one of the law-enforcement-officer communications that Bell intended to prevent would have been with a federal officer. In Stansfield, the defendant believed that one Hoffman had told the authorities that Stansfield had burned down his

_____

2. The government contends that "federal proceedings were, in fact, contemplated as the result of the victim's discussions with Special Agent Diller. (App. Vol. 2, pp. 45, 46)." Govt. Br. at 23. Diller's testimony does not bear this characterization. He did not say anything that can be construed to mean that the Task Force had already decided at the time of Proctor's murder to make a federal case out of the drug trade in which Tyler, Bell, and others were engaged, or that it had even thought about doing so.

5

(Stansfield's) house to collect the insurance money. Stansfield threatened, beat up, and attempted to kill Hoffman and Hoffman's parents. On appeal, Stansfield argued that his conviction for witness tampering could not stand because there was insufficient evidence that he had intended to hinder Hoffman's communications with a federal law enforcement officer. Id. at 917.

Stansfield argued that the government was required to prove "an intent to prevent the communication of information to some particular law enforcement officer" who was, in fact, a federal officer. Id. at 918. The government countered that all it had to prove was that "the offense about which the defendant wishe[d] to prevent communications [was] actually a federal offense." Id. We rejected Stansfield's interpretation, but noted as well that "the position of the government [was not] without problems." Id. We expressed concern that if we demanded "only that the government prove that the underlying offense is federal and that the defendant intended to prevent the witness from communicating with law enforcement officers in general . . . we would essentially vitiate an important facet of the intent requirement of the statute." Id. We set forth the following formulation of the elements of § 1512(a)(1)(C):

[T]he government must prove: (1) the defendant killed or attempted to kill a person; (2) the defendant was motivated by a desire to prevent the communication between any person and law enforcement authorities concerning the commission or possible commission of an offense; (3) that offense was actually a federal offense; and (4) the defendant believed that the person in (2) above might communicate with the federal authorities.

Id. (emphasis added).

In view of the statute's clear command that the government need not prove any "state of mind" on the part of the defendant with respect to the federal character of the proceeding or officer, 18 U.S.C. § 1512(f), we do not read the italicized passage as requiring proof that the defendant believed the victim might communicate with law

6

enforcement officers <u>whom the defendant knew or believed to be federal officers</u>. Rather, we read this sentence as recognizing that what the statute mandates is proof that the officers with whom the defendant believed the victim might communicate <u>would in fact be federal officers</u>.3

Our interpretation is buttressed by the <u>Stansfield</u> court's explanation that "[t]his last element may be inferred by the jury from the fact that the offense was federal in nature, plus additional appropriate evidence." <u>Id</u>. If an offense constitutes a federal crime, it is more likely that an officer investigating it would <u>be</u> a federal officer, but an offense's status as a federal crime has no relationship with the defendant's subjective belief about the individual investigating it. Our reading of <u>Stansfield</u> is further confirmed by an examination of the dissent in that case. The dissent would have ordered the entry of a judgment of acquittal because the evidence revealed "no way to conclude that Stansfield either believed that a federal investigation was underway or could possibly have been aware of the potential for a federal investigation." <u>Id</u>. at 924 (Lewis, J., dissenting). The dissent thus clearly framed the issue as whether the defendant must know or intend that the law-enforcement-officer communications which he seeks to prevent would be with federal officers. Because of the majority's conclusion that such federal-specific knowledge or intent was not required, the dissent charged that the majority had "essentially eviscerate[d] the intent element of the statute." <u>Id</u>. at 923 (Lewis, J., dissenting).

Accordingly, we believe that the law of this circuit after <u>Stansfield</u> is that the government must prove that at least one of the law-enforcement-officer communications which the defendant sought to prevent would have been with a

_____

3. We do not mean to imply that the victim and the witness or informant -- the person murdered and the person whom the murderer intended to prevent from communicating with the authorities -- must be one and the same. 18 U.S.C. § 1512(a)(1)(C) seems to apply as well to a situation where the defendant kills one person at least in part to set an intimidating example to dissuade another person or persons from communicating to the authorities. <u>See id</u>. ("Whoever kills or attempts to kill <u>another person</u>, with intent to . . . prevent the communication <u>by any person</u> to a law enforcement officer . . . .") (emphases added).

7

federal officer, but that the government is not obligated to prove that the defendant knew or intended anything with respect to this federal involvement. As Stansfield explained, the government may carry this burden by showing that the conduct which the defendant believed would be discussed in these communications constitutes a federal offense, so long as the government also presents "additional appropriate evidence." Id. at 918.

B. The questions upon which the disposition of this appeal turns, then, are: (1) whether the jury could have concluded that at least part of Bell's motivation in killing Proctor was to prevent Proctor from communicating further with the Task Force; and (2) if so, whether the jury could have concluded that at least one of Proctor's further communications with the Task Force would have been with a federal officer.

We have no hesitation in answering the first question in the affirmative. In Stansfield, the government's case appears to have been based solely on the law-enforcement-officer-communication part of the statute. Here, in contrast, the government has emphasized the official-proceeding subsection (despite the fact that § 1512 clearly would not apply if Bell's sole motivation in killing Proctor was to prevent her from testifying at Tyler's trial, because that state-court trial does not qualify as an "official proceeding"). Nevertheless, the government also alleged in the indictment and submitted to the jury the theory that Bell killed Proctor to prevent her from communicating with law enforcement officers. (App. 62A, 70A, 72A-73A; 561-62, 565-66, 586-87)

We are satisfied that, while the evidence may lend itself more obviously to the theory that Bell killed Proctor in order to prevent her from testifying a few hours later at Tyler's trial, it also supports the inference that Bell believed Proctor was going to continue to communicate with the Task Force concerning drug crimes that Bell and others had committed. It is undisputed that, as a result of Proctor's information and testimony, an individual named Mary Jane Hodge had been convicted of drug offenses, and that at the time of her murder Proctor was scheduled to testify against two other drug defendants besides Tyler. (App. 54-57) The Task Force had not at that point begun an

8

investigation of Bell, but it is undisputed that Proctor "was still providing information about the drug trade in the Carlisle area at the time and also Harrisburg," a drug trade in which Bell was personally and heavily involved. (App. 57)

We hold that it was reasonable for the jury to infer that Bell feared that Proctor's continued cooperation with the Task Force would have resulted in additional communications with law enforcement officers concerning drug crimes committed by Bell, among others, and that at least part of Bell's motivation in killing Proctor was to prevent such communications. The evidence is thus sufficient to support a finding that Bell killed Proctor not only to protect her boyfriend, Tyler, but also to protect herself, because there is evidence that Bell was at least as heavily implicated as Tyler in the drug trade for which Tyler was on trial. (App. 300, 435-36, 451)

We also believe that the second question requires an affirmative answer. The government clearly presented sufficient evidence to entitle the jury to conclude that Bell killed Proctor; we have held that the jury could have found that Bell was motivated at least in part by a desire to prevent Proctor from communicating with the Task Force concerning the commission or possible commission of offenses; and those offenses (drug crimes) are clearly federal offenses. See Stansfield, 101 F.3d at 918. Bell, like Stansfield, "had knowledge of [Proctor's] past cooperation and was aware that some investigation, though not necessarily a federal one, was underway." Id. at 919. The Stansfield court noted that it was unclear whether Stansfield knew that a federal investigation had been opened. Id. Similarly, it is unclear whether Bell knew that the Task Force was a joint federal-state effort, but it is clear that it in fact was. As in Stansfield, the evidence does not indicate that Bell intended to prevent Proctor from communicating with a particular officer or officers, but rather with the Task Force generally.

We hold that it was reasonable for the jury to infer that if Proctor had continued to cooperate with a partially federal law enforcement body regarding conduct constituting federal crimes, at least one of her communications would have been to a federal officer or to

9

an officer authorized to act on behalf of the federal government.4 The jury thus could reasonably have found that Bell killed Proctor "with intent to . . . prevent the communication by [Proctor] to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(a)(1)(C). Contrary to the criticism expressed by the dissent in Stansfield, this conclusion does not render the defendant's intent "irrelevant." See 101 F.3d at 922 (Lewis, J., dissenting). Rather, it respects fully the statute's requirement that the defendant intend to prevent a communication to a law enforcement officer, as well as its requirement that such officer be, in fact, a federal officer. What our analysis renders irrelevant is the defendant's "mental state" regarding the fact that the officer is a federal officer -- a fact which § 1512(f)(2) by its terms declares irrelevant.5

III.

We next address Bell's challenge to the district court's jury charge with respect to the intent requirement of the tampering counts. The court gave the jury a supplemental instruction stating that the government was required to prove that:

_____

4. Beyond stating our conclusion that the additional evidence presented in this case (in particular, that the Task Force was a joint federal-state effort that had developed federal cases in the past) constitutes "additional appropriate evidence" of the sort mandated by Stansfield, 101 F.3d at 918, we express no opinion as to what types and what quantum of evidence satisfy that standard, which by its nature will require careful, case-by-case analysis.

5. Bell's argument that the federal government lacks jurisdiction to try her for these crimes is founded upon her contention that the evidence reveals no nexus between her charged conduct and any federal interest. In light of our conclusion that the evidence is sufficient to sustain Bell's convictions for tampering with a federal informant, we reject her jurisdictional argument. Similarly, Bell's sufficiency argument as to the conspiracy and gun charges depends upon the success of her sufficiency challenge to the tampering counts. We therefore find this argument as well to be meritless.

10

defendant intended to frustrate a future judicial
proceeding, and in parentheses that would turn out to
be a federal proceeding . . . .

[Y]ou would have to find beyond a reasonable doubt
that the defendant intended to frustrate a future
judicial proceeding. You would also have to conclude
that that proceeding would be a federal proceeding, but
you don't have to find that the defendant knew that it
would be a federal proceeding.

(App. 586) Bell argues that this charge "watered down" the
intent requirement by "shift[ing] the jury's focus to deciding
whether it was possible that the victim could relay
information to federal law enforcement, rather than to the
proper inquiry -- the intent of the Defendant . . . ." Bell Br.
at 29 (emphasis in original).

This argument is meritless. The quoted instruction did
nothing more than explain 18 U.S.C. § 1512(f)(1) and (2)'s
express provision that the government need not prove any
state of mind on the part of the defendant with respect to
the federal character of the proceeding or law-enforcement-
officer communication that it alleges she intended to
interfere with or prevent.

IV.

In sentencing Bell to life imprisonment, the district court
followed the pre-sentence report's recommendation and
applied U.S.S.G. § 2A1.1(a), the guideline for first-degree
murder. Bell contends that since the jury did not find that
her killing of Proctor constituted first-degree murder, it was
error for the district court to sentence her based on the
first-degree murder guideline rather than the second-degree
guideline.

The provision under which Bell was sentenced, 18 U.S.C.
§ 1512(a)(2)(A), incorporates 18 U.S.C. § 1111's definition of
murder, and provides that a conviction for tampering-by-
killing shall be punished by death or life imprisonment if
the killing constitutes murder under § 1111, and shall be
punished in accordance with § 1112 (the manslaughter
statute) if it is any other kind of killing. Here the district

11

court found by a preponderance of the evidence that Bell's conduct fit the definition of first-degree murder set forth in 18 U.S.C. § 1111(a). (App. 21A-30A) Bell argues that it was a violation of due process for the district court, as opposed to the jury, to make this determination.

We are unpersuaded by this argument, but we need not resolve it definitively. Even if Bell should have been found to have committed second-degree rather than first-degree murder, it would not affect her sentence. Title 18 U.S.C. § 1512(a)(2)(A) provides that the punishment shall be death or life imprisonment where the "killing" constitutes murder, regardless of whether it is first-degree or second-degree murder. Bell does not argue that the "killing" here should have been found to be manslaughter.6

V.

For the foregoing reasons, we affirm the judgment of conviction and sentence entered by the district court.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

6. Bell also reiterates the double jeopardy, collateral estoppel, and selective prosecution arguments that were rejected by the district court. The dual sovereigns doctrine has long foreclosed Bell's argument that the federal government may not prosecute her for the same conduct of which she was acquitted in state court, and Bell fails in her attempt to fit this case into the "Bartkus exception" to that doctrine. See Bartkus v. Illinois, 359 U.S. 121 (1959). The same defect -- no identity of parties -- dooms Bell's collateral estoppel argument. Finally, Bell's selective prosecution argument is frivolous. No such claim lies unless Bell can make out a difficult prima facie showing that she was selected for prosecution for an invidious reason such as her race, her religion, or her exercise of constitutional rights. See, e.g., Wayte v. United States, 470 U.S. 598, 608 (1985). The only motive so much as hinted at here -- that the federal government chose to prosecute Bell after her state court acquittal because it did not want her to get away with murder -- is far from invidious.

12