

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-13-1999

# USA v. Berry

Precedential or Non-Precedential:

Docket 98-1140

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation
"USA v. Berry" (1999). *1999 Decisions.* Paper 8.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/8

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 13, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1140

THE UNITED STATES OF AMERICA

v.

DARREN P. BERRY a/k/a DWIGHT BRAXTON a/k/a
RONALD MARTIN a/k/a DERRICK BRYANT a/k/a
DWAYNE BRITON

Darren P. Berry,
       Appellant.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 97-CR-00337-1)
District Judge: The Honorable Eduardo C. Robreno

Argued on October 6, 1998

BEFORE: Becker, Chief Judge, Nygaard, and Noonan,*
Circuit Judges.

(Filed January 13, 1999)

_____

*The Honorable John T. Noonan, Jr., Circuit Judge of the United
States Court of Appeals for the Ninth Circuit, sitting by designation.

          David L. McColgin (Argued)
          Defender Association of Philadelphia
          Federal Court Division
          437 Chestnut Street
          Lafayette Building, Suite 800
          Philadelphia, PA 19106-2414

          Attorney for Appellant

          Terri A. Marinari (Argued)
          Suite 1250
          Office of United States Attorney
          615 Chestnut Street
          Philadelphia, PA 19106

          Attorney for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

This case is before us on interlocutory appeal from the District Court's denial of defendant Darren Berry's motion to dismiss on double jeopardy grounds. Berry was charged with three counts of distributing cocaine base in violation of 21 U.S.C. S 841(a)(1). In his motion to dismiss, Berry argued that the federal prosecution was barred by his earlier plea and sentence in state court on charges arising from the same drug transactions as those charged in the federal indictment at issue here. The District Court denied the motion. The only issue on appeal is whether the District Court erred by doing so. We conclude that it did not and will affirm.

I.

The District Court did not make specific findings of facts, but based its decision on the facts as construed by Berry. The facts favorable to Berry are essentially as follows. In about December of 1996, Assistant District Attorney Nancy Winter, who was cross-designated as a Special Assistant United States Attorney, spoke with Pennsylvania State

Trooper Carlton Watson and told him that she knew of a federal cooperator who had information that Watson might be able to use.1 Watson had previously been designated as a federal agent in an unrelated case but was not so designated for the investigation of Berry.

On February 7, 1997, Berry sold crack cocaine to Watson, who was working undercover. Within a few days, Watson reported this to Winter. On two later occasions, Berry again sold crack to Watson. After the third sale, on February 21, 1997, the Pennsylvania State Police arrested Berry and charged him in state court. On June 24 of the same year, Berry pleaded guilty in state court and was sentenced to four to ten years in prison.

A short while later, as part of an ongoing, cooperative program between the U.S. Attorney's office and the Philadelphia District Attorney's office, Berry's case was reviewed and selected for federal prosecution.2 Berry was federally indicted on July 16, 1997. Winter had coordinated and organized the FAST (Federal Alternatives to State Trials) program with federal authorities for more than six years and was cross-designated as a Special Assistant U.S. Attorney for that purpose.

FAST involves a regular review of arrests referred for state court prosecution by the District Attorney's Office to determine whether, based on specific criteria, federal prosecution is appropriate. Cases selected by the state officials are then reviewed by supervisors at the U.S. Attorney's Office, who decide which cases are most appropriate for federal prosecution. An Assistant U.S. Attorney is then assigned to prosecute the matter.

One of the criteria used to determine whether the case will be selected for federal prosecution is whether a defendant, based on his or her prior criminal record, is a career offender under U.S. Sentencing GuidelinesS 4B1.l.

_____

1. Winter testified that there were no federal agents available to make use of the information at the time.

2. We note that the Government followed the Petite policy and requested and received approval for the federal prosecution from the Attorney General.

The quantity of drugs involved is a second factor. Another general factor is whether the case is related to an ongoing federal investigation or previously-adopted state prosecution. Berry met each of these criteria, and as a result, his case was selected for federal prosecution.

Prosecutor Winter was involved in the selection of Berry's case for federal prosecution, but the two prosecutors' offices applied the FAST criteria separately. In other words, the criteria were used first by the District Attorney's office to decide whether to present the case to federal authorities, and then by the U.S. Attorney's Office to decide whether to prosecute the case at the federal level.

After being selected for federal prosecution, Berry was sent a "target letter" notifying him that he was under federal drug investigation and advising him to contact the Federal Defender's Office if he was unable to afford an attorney. Berry appeared before a Magistrate Judge who appointed Federal Defender Leigh Skipper to represent him. Skipper informed the government of Berry's desire to cooperate and made an initial "proffer" to the government. At this meeting the government informed Berry and Skipper that it intended to present Berry's case to the grand jury. Skipper requested additional time in which to provide assistance, and the government agreed to a short delay to allow Berry an opportunity to earn a downward departure under section 5K1.l of the sentencing guidelines.

After a short delay, the federal grand jury indicted Berry on three counts of distributing crack cocaine. At his arraignment, Berry told the Pretrial Services Officer that he was surprised that he had been charged federally because he had pleaded guilty in state court to avoid federal prosecution. Berry stated that he had been told by the attorney representing him in state court that it was unlikely that the federal authorities would pursue his case if he pleaded guilty in state court. Neither the Government nor Attorney Skipper was aware, until after Berry's federal indictment, that Berry had pleaded guilty in state court.

Berry had entered a negotiated guilty plea in state court and had been sentenced immediately. The Assistant District Attorney (not Winter) who negotiated Berry's guilty plea

4

with his state court defense attorney stated that Berry's case had been taken out of order at the request of his defense attorney. The Assistant District Attorney was not aware that Berry was scheduled for federal prosecution.

II.

It is not disputed that Berry's prosecution by the federal government for the same acts that his state prosecution dealt with does not, standing alone, represent a violation of the Fifth Amendment's proscription against double jeopardy. See United States v. Wheeler, 435 U.S. 313, 316-17, 98 S. Ct. 1079, 1082 (1978). Nonetheless, Berry argues that when the evidence is viewed as a whole, it is clear that the state prosecution was heavily influenced and controlled from beginning to end by federal authorities, and, therefore, that his federal prosecution falls within the narrow "Bartkus exception" to the dual sovereignty rule. See Bartkus v. Illinois, 359 U.S. 121, 124, 79 S. Ct. 676, 678 (1959). We disagree.

In Bartkus, the Supreme Court alluded to the possibility that dual federal and state prosecutions might run afoul of the general rule affirming such prosecutions if one authority was acting as a surrogate for the other, or if the state prosecution was merely "a sham and a cover for a federal prosecution." Id. at 123-24, 79 S. Ct. at 678. Berry points out that the information about him came from a federal cooperator, who was referred by Winter, the cross-designated Special Assistant U.S. Attorney, to State Trooper Watson, who had recently been sworn in as a federal agent. Winter and Watson spoke about the investigation and about the arrest of Berry, and, ultimately, Winter recommended that Berry be prosecuted federally. Berry argues that, under these circumstances, the most reasonable conclusion to be drawn is that the state prosecution was so influenced and controlled by the federal authorities that it was merely a "sham and a cover" for the federal prosecution. Accordingly, Berry claims that his situation fits the Bartkus exception to the dual sovereignty rule. Berry argues that the District Court erred by holding that the federal charge does not violate the Double Jeopardy Clause and by refusing to dismiss the indictment.

5

Not so. Although we have previously recognized the potential existence of an exception to the dual sovereignty rule under Bartkus, see United States v. Bell, 113 F.3d 1345, 1351 n.6 (3d Cir.), cert. denied, 118 S. Ct. 447 (1997), we have never applied the exception to overturn a second state or federal prosecution.3 Even were we to apply the Bartkus exception to Berry's case, the facts here would not fit within the scope of the exception because this state prosecution simply cannot be considered "a sham and a cover" for a federal prosecution.4

First, the initial investigation was conducted by State Trooper Watson, who was not acting as a federal agent, and it involved no commitment of federal resources. In Bartkus, federal and state officials had cooperated with each other, and this cooperation was sanctioned by the Supreme Court. See Bartkus, 359 U.S. at 123, 79 S. Ct. at 678. Although Trooper Watson had been deputized to act as a federal agent in another case, he was not performing this role in Berry's case. The fact that Watson received information from a federal source does not imply federal control over his actions.

Second, Berry's case was selected for federal prosecution based on facts implicating valid federal interests, namely:

_____

3. At least one circuit has questioned whether the Court even intended to create an exception in Bartkus. See United States v. Brocksmith, 991 F.2d 1363, 1366 (7th Cir. 1993).

4. Therefore, this is not the occasion for us to decide whether to apply the Bartkus exception. We also note that we and other Courts of Appeal have suggested that the growth of federal criminal law has created a need for the Supreme Court to reconsider the application of the dual sovereignty rule to situations such as this. See United States v. Grimes, 641 F.2d 96, 101 (3d Cir. 1981) (arguing that "a reexamination of [the dual sovereignty doctrine] may be in order" because of its questionable "formalistic conception" and "the recent expansion of federal criminal law jurisdiction"); see also United States v. All Assets of G.P.S. Automotive Corp., 66 F.3d 483, 496-97 (2d Cir. 1995) (citing Grimes and noting that "the [Bartkus] exception's narrowness combine[d] with significant developments both in substantive federal criminal law and in criminal law enforcement [indicates] that the entire dual sovereignty doctrine is in need of serious reconsideration"). However, this is a matter for the Supreme Court.

(1) Berry's criminal history qualified him as a career offender under the U.S. Sentencing Guidelines, (2) the amount of crack cocaine being distributed was high, and (3) the information regarding Berry's drug activit ies emanated from an individual who had been accepted for federal prosecution. As earlier noted, these are guideline criteria for the FAST program, and the ultimate determination as to federal prosecution was made by the U.S. Attorney's Office based upon these criteria.

III. Conclusion

In sum, we conclude that the District Court correctly held that there was no merit to Berry's argument that his federal prosecution requires an exception to the dual sovereignty doctrine because it violates the Double Jeopardy Clause. We conclude that the District Court properly denied Berry's motion to dismiss and we therefore affirm.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

7