**UNITED STATES of America**

v.

**Glenn GUADALUPE Appellant.**

No. 03–3358.

United States Court of Appeals,
Third Circuit.

Argued Feb. 15, 2005.

March 31, 2005.

Mark E. Cedrone (Argued), Cedrone & Janove, Philadelphia, PA, for Appellant.

Anthony J. Wzorek (Argued), Office of the United States Attorney, Philadelphia, PA, for Appellee.

Before SLOVITER, AMBRO and ALDISERT, Circuit Judges.

ALDISERT, Circuit Judge.

 This appeal by Glen Guadalupe requires us to decide whether: (1) the jury's verdict is supported by legally sufficient evidence; and (2) the district court properly instructed the jury. Guadalupe was tried jointly with Appellants Reginald Steptoe and Cornell Tyler in the United States District Court for the Eastern District of Pennsylvania. The jury found Steptoe and Tyler guilty of deprivation of the civil rights of another in violation of 18 U.S.C. § 242 and Guadalupe guilty of obstruction of justice in violation of 18 U.S.C. § 1512(b)(3). Guadalupe was sentenced to, *inter alia,* incarceration for a term of fifteen months. This appeal followed.[1]

---

1. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291. Because Guadalupe did not challenge the sufficiency of the evidence or the jury instructions at trial, we review these questions for plain error. It is the defendant's burden to establish plain error. *United States v. Olano,* 507 U.S. 725, 734–735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). To do so, he must prove that: (1) the court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights—the outcome of the proceeding. *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). If all three elements are established, the court may, but need not, exercise its discretion to award relief if the error

The insufficiency of evidence contention is anchored on the theory that the government failed to prove that Guadalupe believed that Burnette, the person he attempted to corruptly persuade, might communicate with a *federal* official. We conclude that proving a violation of 18 U.S.C. § 1512(b)(3) does not depend on the existence or imminency of a federal investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime by officials who happen to be federal. Because of Guadalupe's position and experience in prison administration, he knew or should have known that the beating of Dante Hunter constituted a violation of federal civil rights statutes. Accordingly, we will affirm.

## I.

Guadalupe was the former Deputy Warden of Operations at Curran Fromhold Correctional Facility ("CFCF"), a prison in Philadelphia. On March 11, 1999, Hunter, a prison inmate, was savagely beaten by Steptoe and Tyler, both former correctional officers. Linda Burnette, a former correctional lieutenant, testified that she observed Tyler and Steptoe punch and beat Hunter and said that she ordered them to stop but they would not do so. Burnette's testimony was corroborated by several other witnesses at trial.

Shortly after the beatings, Burnette told Captain Winston Boston, the shift commander, what had happened. After leaving Boston, she went to see Guadalupe and told him as well. She testified that Guadalupe responded that somebody was going to "burn" for what happened. After Burnette identified the officers who had beaten Hunter, Guadalupe told her: "they can't burn ... they're my boys, my homies."

Later, when Burnette, Boston and Guadalupe were discussing the incident, Guadalupe said that he had informed the officers involved in the beating that "someone had to come up with an injury to justify the amount of force" used on Hunter. Guadalupe also told Burnette that, in her memorandum on the beating, she should not mention that she had ordered the officers to stop.

Because she felt intimidated and was afraid to "go against the grain," Burnette lied in the written statement she gave to Boston and the first two statements she gave to Internal Affairs. On March 21, 1999, Burnette told Warden Dunleavy that she had lied. Two days later she gave a full truthful statement to Internal Affairs.

## II.

18 U.S.C. § 1512(b)(3) makes it a federal offense to "knowingly ... corruptly persuade another person or attempt[ ] to do so ... with intent to hinder, delay, or prevent the communication to a law enforcement officer ... of the United States ... of information relating to the commission or possible commission of a Federal offense...." The statute further provides that "an official proceeding need not be pending or about to be instituted at the time of the offense ...." § 1512(e)(1). "No state of mind need be proved with respect to the circumstance ... that the official proceeding is before a judge or court of the United States ...," § 1512(f)(1), and "that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for ... the Federal Government ...," § 1512(f)(2).

affects the fairness, integrity or public perception of the proceedings. *Id.*

■ To obtain a conviction pursuant to 18 U.S.C. § 1512(b)(3), the government must prove that: (1) the defendant attempted to corruptly persuade a person; (2) the defendant was motivated by a desire to prevent the communication between that person and law enforcement authorities concerning the commission or possible commission of an offense; (3) the offense was actually a federal offense; and (4) the defendant believed that the person he attempted to corruptly persuade might communicate with federal authorities. *United States v. Stansfield,* 101 F.3d 909, 918 (3d Cir.1996). This last element may be inferred from the fact that the offense was federal in nature, plus "additional appropriate evidence." *Id.* An example of this "additional appropriate evidence" is that the defendant had actual knowledge of the federal nature of the offense. *Id.*

From a policy standpoint, "this framework is an appropriate reconciliation between the constraint that the government must prove the defendant's specific intent to hinder a *federal* investigation and the fact that, by virtue of § 1512(f), it need not prove that the defendant knew the federal status of any particular law enforcement officer involved in an investigation." *Id.* at 919.

The cumulative experience of this Court's judges give us specific direction on how to analyze a charge under § 1512(b)(3). In *Stansfield,* we upheld a defendant's conviction for tampering with a witness because there was "additional appropriate evidence" that the defendant believed that the witness might communicate with federal authorities. *Id.* The defendant had knowledge of the witness's past cooperation with federal authorities and was aware that an investigation, though not necessarily a federal one, was underway. *Id.*

In *United States v. Bell,* 113 F.3d 1345 (3d Cir.1997), we applied the precise teachings of *Stansfield* to a similar set of facts. A witness was an informant for a task force comprised of local, state and federal investigators and was scheduled to testify at a state drug trial for the defendant's boyfriend. *Id.* at 1347. The defendant was also implicated in many of these drug offenses. Before the boyfriend's trial, the defendant kidnapped and murdered the witness. *Id.* This Court discussed *Stansfield* and reiterated that the government "must prove that at least one of the law enforcement-officer communications which the defendant sought to prevent would have been with a federal officer, but [ ] the government is not obligated to prove that the defendant knew or intended anything with respect to this federal involvement." *Id.* at 1349. In applying these principles to the facts in *Bell,* we reasoned that

> while the evidence may lend itself more obviously to the theory that Bell killed Proctor in order to prevent her from testifying a few hours later at Tyler's trial, it also supports the inference that Bell believed Proctor was going to continue to communicate with the Task Force concerning drug crimes that Bell and others had committed.

*Id.* at 1350.

*United States v. Applewhaite,* 195 F.3d 679 (3d Cir.1999), added a new dimension to our jurisprudence. There, the defendant was involved with a woman who was separated from her husband. The defendant and the wife kidnapped the husband and attempted to murder him. *Id.* at 683. After the attack, the wife talked to a local police officer and asked him to provide an alibi for her. Following her arrest, her lover reminded the police officer to cover for her. *Id.*

The defendants were convicted of tampering with a witness in violation of 18

U.S.C. § 1512(b)(3). *Id.* at 686. On appeal, they contended that "the evidence was not sufficient to allow the jury to infer that [the local police officer] would provide a false alibi to a federal law enforcement officer." *Id.*

In analyzing the federal tampering conviction, we concluded that

> the evidence showed that the defendants attempted to influence the testimony available to law enforcement officers. The government did not have to establish that the defendants specifically intended to interfere with a federal investigation. All that § 1512(b)(3) requires is that the government establish that the defendants had the intent to influence an investigation that happened to be federal.

*Id.* at 687.

The teachings of *Applewhaite* lessened the government's burden of proof in federal obstruction of justice cases because we did not require any "additional appropriate evidence" that the defendant believed the person he attempted to corruptly persuade might communicate with federal officials. *Applewhaite* is in line with the United States Court of Appeals for the Eleventh Circuit's decision in *United States v. Veal,* 153 F.3d 1233, 1250 (11th Cir.1998) (holding that 18 U.S.C. § 1512(b)(3) "does not depend on the existence or imminency of a federal case or investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime"). The court in *Veal* reasoned:

> For violation of § 1512(b)(3), it is sufficient if the misleading information is *likely* to be transferred to a federal agent. All that was required for Veal, Watson and Haynes's violation of § 1512(b)(3) was the *possibility* or *likelihood* that their false and misleading information would be transferred to fed-

eral authorities irrespective of the governmental authority represented by the initial investigators.

*Id.* at 1251–1252 (emphasis in original).

The United States Court of Appeals for the Fifth Circuit in *United States v. Causey,* 185 F.3d 407 (5th Cir.1999), flatly rejected the *Veal* decision stating: "We do not find the Eleventh Circuit's reasoning persuasive in resolving the question before us in this case." *Id.* at 422. The court reversed a defendant's conviction pursuant to 18 U.S.C. § 1512(a)(1)(c) because there was no evidence that the murder was motivated by a desire to impact a future federal investigation. *Id.* at 422–423. Significantly, the court made favorable reference to our 1997 *Bell* case, but did not have the advantage of the teachings of *Applewhaite,* decided subsequent to *Causey.*

Here, the government met its burden of proof as most recently articulated in *Applewhaite* because Guadalupe intended to influence an investigation which later became federal. We also stay faithful to the teachings of *Stansfield* and *Bell* because there is "additional appropriate evidence" that Guadalupe knew or should have known that Burnette might communicate with federal officials based on his position and experience as a prison administrator.

### III.

Guadalupe was convicted under § 1512(b)(3) for "corruptly persuading" Burnette not to report that Steptoe and Tyler beat Hunter. It is undisputed that: (1) Guadalupe attempted to corruptly persuade Burnette; (2) he was motivated by a desire to prevent Burnette from communicating with officials concerning the beating of Hunter; and (3) the beating of Hunter was actually a federal offense. The only disputed issue is whether Guadalupe believed that Burnette might communicate

with *federal* authorities. *See Stansfield,* 101 F.3d at 918.

Guadalupe argues that the evidence demonstrates that he intended solely to influence a non-federal investigation because he specifically instructed Burnette to make misstatements on an internal prison memoranda and during an interview with Internal Affairs. We conclude that the evidence also supports an inference that Guadalupe believed that Burnette might communicate with federal authorities.

At the time of Hunter's beating, Guadalupe had approximately seventeen years experience as a prison administrator, was second in command of CFCF along with two other deputy wardens and was responsible for the investigation of cases where correctional officers physically abused inmates. Because of his position and experience, Guadalupe had knowledge, or should have had knowledge, that the beating of an inmate in a penal institution may be considered a federal civil rights violation. There are a multitude of cases in which prison administrators have been prosecuted under 18 U.S.C. §§ 241 and 242 and it can be inferred that an administrator at Guadalupe's level would be aware of this body of case law. *See e.g., United States v. Tines,* 70 F.3d 891, 893 (6th Cir.1995) (holding that evidence was sufficient to support a prison guard's conviction under § 242 when the guard gathered other prison officers for the purpose of beating the inmates, gave the other officers stun guns and was also seen in the control room during beatings); *United States v. Vaden,* 912 F.2d 780, 781 (5th Cir.1990) (upholding a prison guard's conviction for violating

the rights of an inmate under § 242 and aiding and abetting assaults on the inmate); *United States v. Bigham,* 812 F.2d 943, 944 (5th Cir.1987) (analyzing prison officials' convictions under §§ 241 and 242 for violating the civil rights of two inmates); *United States v. Jackson,* 235 F.2d 925, 928 (8th Cir.1956) (holding that a state prison guard who beat a prisoner violated § 242).[2]

Moreover, we are compelled to conclude that someone in Guadalupe's position would also be conversant with the large body of cases adjudicating civil complaints by prison inmates against corrections officials under 42 U.S.C. § 1983. There are approximately fourteen pages of cases that annotate § 1983 involving "Assault by prison officials." *See* 42 U.S.C.A. § 1983 note 2191.

We hold that it was reasonable for the jury to infer that Guadalupe attempted to corruptly persuade Burnette "with intent to ... prevent the communication by [Burnette] to a law enforcement officer ... of the United States of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b)(3). Although the government did not prove that Guadalupe had actual knowledge of the federal nature of the offense or that Burnette's information might ultimately be communicated to officers who happen to be federal, this knowledge can be inferred by virtue of Guadalupe's position as a veteran top executive of CFCF with extensive knowledge of how investigations of the sort involved here proceed (including that federal authorities

---

**2.** Since the events of March, 1999, additional cases have joined the parade of those exposing the criminal culpability of correction officers. *See United States v. Garcia,* 114 Fed. Appx. 292, 294 (9th Cir.2004) (affirming former prison guards' conviction under § 241 for conspiracy to violate prisoners' constitutional rights); *United States v. Velazquez,* 246 F.3d 204, 207 (2d Cir.2001) (discussing the conviction of two prison guards pursuant to §§ 241 and 242 for beating a prisoner to death).

typically become involved).[3] Accordingly, there is sufficient evidence to uphold Guadalupe's conviction pursuant to 18 U.S.C. § 1512(b)(3).

## IV.

■ In the case of an erroneous jury instruction, the relevant inquiry is whether, in light of the evidence presented at trial, the failure to instruct had a prejudicial effect on the jury's deliberations so as to produce a miscarriage of justice. *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir.2004) (holding that the district court's failure to instruct the jury that knowledge of an obliterated serial number was an element of the crime of possession of a firearm with obliterated serial number was plain error). In *United States v. Farrell*, 126 F.3d 484 (3d Cir.1997), we stated that "[w]ithout any definitional assistance, we find the phrase 'corruptly persuades' to be ambiguous." *Id.* at 487. We reversed the defendant's conviction because we concluded that the conduct for which he was convicted did not constitute "corrupt persuasion" within the meaning of the statute. *Id.* at 486.

■ Here, Guadalupe argues that the district court improperly instructed the jury with respect to the elements of 18 U.S.C. § 1512(b)(3) because it did not define "corruptly persuades" and because it improperly explained the extent to which federal involvement must be present. First, even if the court erred by not defining "corruptly persuades," there is no evidence that this error had a prejudicial affect on the jury's deliberations so as to produce a miscarriage of justice. Unlike *Farrell*, Guadalupe does not contend that

there is insufficient evidence that his conduct constituted corrupt persuasion within the meaning of the statute. The evidence is sufficient that Guadalupe instructed Burnette to lie to cover up the incident. Accordingly, there was no miscarriage of justice.

Second, we detect no error with the instructions regarding the federal element of the crime. The court's instructions comport with the instructions approved by this Court in *Stansfield*. *See* 171 F.3d at 816 n. 8 (instructing the jury, in relevant part, that "there need not be an ongoing federal investigation or even any intent on the part of federal authorities to investigate"). Accordingly, there was no plain error.

\* \* \* \* \* \*

After *Applewhaite*, the government may meet its burden of proof under 18 U.S.C. § 1512(b)(3) by proving that the defendant had the intent to influence an investigation that later turned out to be federal. 195 F.3d at 687. Under *Stansfield*, the government must present "additional appropriate evidence" of a federal nexus. *See Bell*, 113 F.3d at 1349. Here, the government has met the test articulated in *Applewhaite* as well as the more stringent test articulated previously in *Stansfield*. By attempting to corruptly persuade Burnette, Guadalupe intended to influence an investigation that later turned out to be federal. There is also "additional appropriate evidence" that Guadalupe knew or should have known that Burnette might communicate with federal officials based on his knowledge of the federal nature of the crime imputed to him because of his position and experience as a prison admin-

---

**3.** This actually is more than *Bell* requires, as here Guadalupe knew or should have known from his unique perspective that federal officers were highly likely to be involved at some point in the investigation whereas *Bell* merely requires that Guadalupe know that he was causing the withholding of information to officials who are in fact federal regardless of whether Guadalupe actually knew they were federal officials. *See Bell*, 113 F.3d at 1350.

istrator. Accordingly, the jury's verdict is supported by legally sufficient evidence.

Additionally, there was no plain error in the district judge's instructions to the jury.

The judgment of the district court will be affirmed.