**UNITED STATES of America,
Appellee,**

v.

**Emile DIXON, Defendant–Appellant.**

**No. 04–2962–CR.**

United States Court of Appeals,
Second Circuit.

Feb. 16, 2006.

843

Ephraim Savitt (Richard Ware Levitt, on the brief), New York, NY, for Appellant.

Jack Smith, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney, Eastern District of New York; David C. James, Assistant United States Attorney), New York, NY, for Appellee, of counsel.

Present: Hon. RICHARD J. CARDAMONE, Hon. ROSEMARY S. POOLER, and Hon. SONIA SOTOMAYOR, Circuit Judges.

Defendant-appellant Emile Dixon ("Dixon") was convicted, after a five week jury trial, of racketeering, racketeering conspiracy, conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, distribution and possession of cocaine and cocaine base, conspiracy to murder, murder in aid of racketeering, obstruction of justice murder, using and carrying a firearm in furtherance of a violent crime, causing death through the use of a firearm, murder in furtherance of narcotics trafficking, and possession of a firearm as a convicted felon. The district court principally sentenced Dixon to life in prison. We assume the parties' familiarity with the facts of this case, its relevant procedural history, and the issues on appeal. Dixon raises a number of challenges to his convictions, most of which are predicated on the insufficiency of the evidence presented at trial.

Dixon carries a heavy burden in challenging the sufficiency of the evidence of his convictions. *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir.2004). "Reversal is warranted only if no rational factfinder could have found the crimes charged proved beyond a reasonable doubt." *United States v. Gaskin*, 364 F.3d 438, 459–60 (2d Cir.2004). In considering Dixon's claims, we must view the evidence in the light most favorable to the government and resolve all permissible inferences in its favor. *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir.1995).

■ Contrary to Dixon's assertions, we have never held that a hierarchical structure is required for an association-in-fact to be a racketeering "enterprise" under the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1961(4). Although we have considered the existence of a hierarchy as evidence of a racketeering enterprise, it is not the only piece of evidence from which a jury may infer the existence of RICO enterprise. *See United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (holding that a RICO enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit); *see also United States v. Coonan*, 938 F.2d 1553, 1559 (2d Cir.1991) (explaining that "an association-in-fact is oftentimes more readily proven by 'what it *does*, rather than by abstract analysis of its structure'") (quoting *United States v. Bagaric*, 706 F.2d 42, 56 (2d Cir.1983), *abrogated on other grounds, Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 259–60, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). The evidence of a racketeering enterprise was sufficient for a reasonable jury to infer that the Patio Crew was a RICO enter-

prise. There was testimony that the Patio Crew had a core membership that remained constant over a twelve-year period, established and protected a territory along Lincoln Road in the Flatbush section of Brooklyn in which only they, or people to whom they gave permission, could sell cocaine and crack cocaine, shared opportunities to distribute cocaine and cocaine base in locations in Texas, Virginia, South and North Carolina, and Connecticut, and adhered to certain rules, including prohibiting cooperation with the police and dealing violently with those who did.

■ Dixon next argues that the evidence was insufficient to prove that three of the four charged racketeering acts were related to the Patio Crew racketeering enterprise. We disagree. Relatedness between racketeering acts and the enterprise can be "proven by showing either that: (i) the offense related to the activities of the enterprise, or (ii) the defendant was able to commit the offense solely because of his position in the enterprise." *United States v. Bruno*, 383 F.3d 65, 84 (2d Cir.2004) (citing *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir.1992)). A reasonable jury could have concluded that Dixon's theft of five kilograms of cocaine from Leslie Pedlar, a rival drug dealer, was related to the Patio Crew's narcotics activities in keeping others from selling drugs on its turf. A reasonable jury also could have found that although Dixon and the other Patio Crew members murdered Pedlar's associate Alphonso Gooden in response to Pedlar's threat against Dixon's mother, they did so in order to retain the drugs that Dixon had stolen as well. Finally, the jury was well within its rights to find that the killing of Robert Thompson to prevent him from testifying against fellow Patio Crew member Humphrey Stewart was connected to the enterprise's goal of discouraging individuals from cooperating with the police.

■ Dixon also challenges the sufficiency of the evidence with respect to his conviction for the murder of Robert Thompson in violation of 18 U.S.C. § 1959. There was evidence here that the Patio Crew's rules mandated violent retribution for those who cooperated with the police and that Thompson's death kept him from testifying against Patio Crew member Humphrey Stewart. This is sufficient evidence for a reasonable jury to infer "that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir.1992); *see also United States v. Dhinsa*, 243 F.3d 635, 672 (2d Cir.2001) (holding that evidence of a conspiracy to murder an associate accused of cooperating with the police and thus a threat to the enterprise satisfied motive requirement); *United States v. Diaz*, 176 F.3d 52, 95 (2d Cir.1999) (finding motive established where defendant murdered a witness to prevent testimony and protect the enterprise).

■ Dixon next challenges his conviction of murdering Robert Thompson in order to obstruct justice in violation of 18 U.S.C. § 1512(a)(1)(c). We have stated that the existence of an ongoing federal investigation can satisfy the government's burden to prove "additional appropriate evidence" that "at least one of the law-enforcement-officer communications which the defendant sought to prevent would have been with a federal officer." *United States v. Diaz*, 176 F.3d 52, 91 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also United States v. Lopez*, 372 F.3d 86, 91 (2d Cir.2004), *vacated for reconsideration on other grounds*, — U.S. ——, 125 S.Ct. 1613, 161

L.Ed.2d 273 (2005) ("Examples of 'additional appropriate evidence' include proof that ... 'there was a federal investigation in progress at the time of the murder.'" (quoting *United States v. Stansfield,* 101 F.3d 909, 918 & n. 4 (3d Cir.1996)); *accord United States v. Bell,* 113 F.3d 1345, 1350 (3d Cir.1997) (evidence of a federal investigation sufficient to support a conviction for obstruction of justice murder). At the time of Thompson's murder, the Federal Bureau of Investigation had an ongoing investigation into the Patio Crew and its violent activities in Brooklyn. While the evidence clearly established that Thompson cooperated with the local police in regard to his being shot by Patio Crew member Humphrey Stewart, a reasonable jury could have inferred that he possibly would have aided the federal agents then-investigating the Patio Crew as well. This is sufficient to uphold the conviction. *See United States v. Romero,* 54 F.3d 56, 62 (2d Cir.1995) ("[T]he killing of an individual with the intent to frustrate the individual's possible cooperation with federal authorities is implicated by the statute.").

■ Finally, we reject Dixon's challenge to his conviction for conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base. Where, as here, the district court gave a multiple conspiracy jury instruction, whether the evidence established a single conspiracy or multiple independent conspiracies is a question of fact. *See United States v. Berger,* 224 F.3d 107, 114 (2d Cir.2000). Even assuming *arguendo* that the evidence established multiple conspiracies, Dixon could not show that the variance caused him prejudice. Dixon was tried alone and thus there is no concern that the jury would not know to whom to apply the evidence. *Id.* at 116. Moreover, Dixon was directly involved in all but two of the out-of-state drug operations and the acts

committed in furtherance of those operations were similar to, and certainly no more prejudicial than, those in which Dixon participated. *United States v. Alessi,* 638 F.2d 466, 475 (2d Cir.1980) (observing that there can be no prejudice where the crimes of the coconspirators "'were not markedly different'" (quoting *United States v. Miley,* 513 F.2d 1191, 1209 (2d Cir.1975)).

We have considered all of Dixon's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of conviction and sentence is AFFIRMED on all counts.