

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2002

# USA v. Tyler

Precedential or Non-Precedential:

Docket 1-1119

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Tyler" (2002). *2002 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 11, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1119

UNITED STATES OF AMERICA

v.

WILLIE TYLER, a/k/a "Little Man"
        Willie Tyler,
            Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Criminal No. 96-cr-00106
(Honorable William W. Caldwell)

Argued: September 6, 2001

Before: SCIRICA, RENDELL and ALDISERT, Circuit  Judges

(Filed February 11, 2002)

        LORI J. ULRICH, ESQUIRE
         (ARGUED)
        Office of Federal Public Defender
        100 Chestnut Street, Suite 306
        Harrisburg, Pennsylvania 17101

         Attorney for Appellant

THEODORE B. SMITH, III, ESQUIRE
  (ARGUED)
GORDON A. D. ZUBROD, ESQUIRE
Office of United States Attorney
Federal Building, Suite 220
228 Walnut Street
P.O. Box 11754
Harrisburg, Pennsylvania 17108

 Attorneys for Appellee

OPINION OF THE COURT

SCIRICA, Circuit Judge:

The central issue on appeal is the constitutionality of the federal witness tampering statute, 18 U.S.C. S 1512. A jury convicted Willie Tyler of violating the witness tampering statute by murdering a potential federal witness. Tyler claims error in the admission of a statement he submitted in connection with a previous sentencing. He also challenges several rulings of the trial court. We will affirm.

I.

Responding to continuing drug trafficking, state and local law enforcement officers from Cumberland, Perry, and York Counties formed the Tri-County Drug Force in central Pennsylvania. In 1991, Doreen Proctor, a resident of Cumberland County and an informant for the Tri-County Drug Force, began buying narcotics undercover. On February 1, 1991, she purchased several grams of cocaine from David Tyler, the brother of Willie Tyler. In July 1991, David Tyler was arrested for drug trafficking. Doreen Proctor testified against David Tyler at his state preliminary hearing. She was scheduled to testify as a prosecution witness in David Tyler's trial on April 21, 1992. On that date, Proctor's severely beaten, lifeless body was found alongside a country road in neighboring Adams County, Pennsylvania.

Evidence at trial demonstrated that on April 20, 1992, the day of Proctor's murder, David Tyler told his brother

2

Willie, "The bitch is going to die tonight," referring to Doreen Proctor. Later the same evening, an eyewitness saw Willie Tyler showing David how to cock a sawed-off shotgun. Another eyewitness said the Tyler brothers tried to abduct Doreen Proctor earlier that day but failed because too many cars were in the vicinity. On the night of April 20, Roberta Ronique Bell, David Tyler's girlfriend, asked Laura Mae Barrett to babysit her children while she and David Tyler left for the evening. The next morning, while Barrett was doing laundry at Bell's house, Bell brought in an armful of bloody clothing, telling Barrett that she was to say Bell had been home all evening.

On April 21, 1992, Willie Tyler appeared at the home of Mary Jane Hodge, where he announced, "It's over. She's gone." David Tyler then arrived, stating, "[S]he's dead, and I'll be at court, I'll be in court but that bitch won't." Shortly after the murder, Barrett returned to Bell's apartment, where she observed a fervent argument between Bell, Willie Tyler, and David Tyler. During the argument, Bell told Willie Tyler, "I shot Doreen, but you killed her." Willie Tyler became angry, telling Bell to be quiet because someone could be listening.

II.

On July 9, 1992, David Tyler, Willie Tyler, and Ronique Bell were arrested by state authorities for the murder of Doreen Proctor. On May 18, 1993, after a jury trial, Willie Tyler was acquitted of the murder but convicted of intimidating a witness.[1] The state court ordered a postconviction presentence investigation. Following an invitation from the Adams County Probation Office, Tyler voluntarily submitted a six-page handwritten letter to the court. Tyler's first four pages described his childhood, education, and work experiences. In the final two pages, Tyler acknowledged he had driven his brother to the murder scene but denied any intent on his part to kill

_____

1. David Tyler was convicted of murder. Bell was acquitted of all charges, but was later convicted for murder in a federal trial. We affirmed Bell's federal conviction. United States v. Bell, 113 F.3d 1345 (3d Cir. 1997).

Proctor. On July 6, 1993, Tyler was sentenced to two to four years in state prison.

Federal authorities launched their own investigation into the death of Doreen Proctor. After his release from state prison, Tyler was indicted by a federal grand jury on April 16, 1996. In his federal trial, the government introduced two inculpatory statements by Tyler, one from July 9, 1992 and one from July 20, 1992.[2] Tyler was convicted of conspiracy to tamper with a witness (18 U.S.C. S 371), tampering with a witness by murder (18 U.S.C. S 1512(a)(1)(A)), tampering with a witness by intimidation and threats (18 U.S.C. S 1512(b)(1)-(3)), and a related firearms offense (18 U.S.C. S 924), and was sentenced to life imprisonment.

On appeal, we suppressed Tyler's July 9, 1992 statement, finding the police failed to "scrupulously honor" Tyler's right to remain silent. Tyler, 164 F.3d at 155. We remanded to determine whether Tyler waived his Miranda rights before making the July 20 statement. Id. at 159. The District Court granted Tyler a new trial, finding his post-arrest statements were obtained in violation of his Sixth Amendment right to counsel.[3] United States v. Tyler, No. 96-106 (M.D. Pa. Feb. 10, 2000).

Before Tyler's second federal trial, an Adams County probation officer released Tyler's letter written to the state trial judge to the Pennsylvania State Police, who forwarded it to the United States Attorney. After the government gave notice it would introduce the letter during its case-in-chief, Tyler moved to suppress it on Fourth, Fifth, and Sixth Amendment grounds. Denying Tyler's motion, the District Court allowed the prosecution to introduce the letter.

_____

2. On July 9, 1992, the night of his arrest, Tyler made an inculpatory statement while in police custody and after being warned of his Miranda rights. On July 20, 1992, Tyler made another inculpatory statement to police.

3. The District Court found "glaring inconsistencies" between a report written by one police trooper present and testimony elicited from another detective at a later suppression hearing. United States v. Tyler, 164 F.3d 150, 153-54 (3d Cir. 1998).

Tyler was acquitted of conspiracy but found guilty of tampering with a witness by murder (18 U.S.C. S 1512(a)(1)(A)), tampering with a witness by intimidation and threats (18 U.S.C. S 1512(b)(1)-(3)), and using a firearm during and in relation to a crime of violence (18 U.S.C. S 924(c)). On January 5, 2001, Tyler was sentenced to life imprisonment.4 This appeal followed.

III.

The District Court had subject matter jurisdiction under 18 U.S.C. S 3231. We have jurisdiction under 28 U.S.C. S 1291.

IV.

Initially, we consider the constitutionality of the Witness Tampering Act, 18 U.S.C. S 1512. Tyler contends the statute is unconstitutional because it is impermissibly vague, exceeds Congress's constitutional authority under the Necessary and Proper Clause, and violates due process by eliminating the prosecutor's burden of proving scienter. Exercising plenary review, United States v. Bishop, 66 F.3d 569, 576 (3d Cir. 1995), we find these arguments unconvincing.

A.

18 U.S.C. S 1512, entitled "Tampering with a witness, victim, or informant," provides:

> (a)(1) Whoever kills or attempts to kill another person, with intent to--
>
> (A) prevent the attendance or testimony of any person in an official proceeding;

_____

4. Tyler received life imprisonment on the tampering-by-murder charge and ten years' imprisonment on the tampering-by-intimidation charge, to be served concurrently. Tyler was also sentenced to five years on the firearm charge, served consecutively with the tampering-by-murder charge, fined $5,000.00, and ordered to pay special assessments amounting to $150.00.

(B) prevent the production of a record, document, or other object, in an official proceeding; or

  (C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (2).

. . .

(b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--

  (1) influence, delay, or prevent the testimony of any person in an official proceeding;

  (2) cause or induce any person to--

    (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

    (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

    (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

    (D) be absent from an official proceeding to which such person has been summoned by legal process; or

  (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than ten years, or both.

. . .

6

(e) For the purposes of this section--

 (1) an official proceeding need not be pending or about to be instituted at the time of the offense . . . .

. . .

(f) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance--

 (1) that the official proceeding before a judge, court, magistrate, grand jury, or government agency is before a judge or court of the United States, a United States magistrate, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or

 (2) that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an advisor or consultant.

Sections (a) and (b) of S 1512 each contain state-of-mind requirements on the defendant's intent to obstruct justice. But under the statute, the prosecution need not prove a defendant's state of mind about the federal nature of the proceeding (S 1512(f)(1)) or that the law enforcement officer is acting on behalf of the federal government (S 1512(f)(2)). Tyler contends the failure to include mens rea requirements for those elements provides no guidance for conviction, violating his due process rights under the Fifth Amendment and rendering the statute void for vagueness. In his briefs and at oral argument, Tyler supports this argument with little more than a citation to Kolender v. Lawson, 461 U.S. 352 (1983).5

_____

5. In Kolender, the Supreme Court held the void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Id. at 357 (quotations and citations omitted). The Court also indicated the second element was more "important," because without "minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Id. at 358 (quotations and citations omitted).

Tyler's argument is essentially a facial challenge to the constitutionality of 18 U.S.C. S 1512. We will address it as such.6 First, we note S 1512 is not bereft of scienter requirements. Tyler was convicted under S 1512(a) (tampering with a witness by murder) and S 1512(b) (tampering with a witness by intimidation and threats), both of which expressly contain "with intent to" provisions. At issue is whether the scienter requirements apply to S 1512(f), which addresses the defendant's knowledge that the proceeding is a federal one (S 1512(f)(1)) and the defendant's knowledge that the judge or law enforcement officer is acting "for or on behalf of " the federal government S 1512(f)(2)).

Due process requires that a penal statute give persons of "common intelligence" fair notice about "what the State commands or forbids." Lanzetta v. New Jersey , 306 U.S. 451, 453 (1939); Artway v. Attorney Gen., 81 F.3d 1235, 1269 (3d Cir. 1996). The plain language of S 1512 forbids a person from preventing a potential witness from attending or testifying at an "official proceeding" by killing or intimidating the potential federal witness. Providing fair notice regarding the conduct it prohibits, the statute complies with the requirements of constitutional due process.

Furthermore, the evidence presented at trial demonstrated Tyler knew Doreen Proctor would be testifying against his brother in a federal prosecution.

_____

6. Because Tyler's conduct is so clearly prohibited by S 1512, we question whether he has standing to challenge the statute's vagueness in all its applications. Cf. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."); United States v. Loy, 237 F.3d 251, 259 (3d Cir. 2001) ("A typical vagueness challenge . . . can only be raised by a defendant whose own conduct arguably did not fall within the terms of the statute . . . .") (citing United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32–33 (1963)). But as we reject Tyler's facial challenge to S 1512, so would we reject a challenge to the statute "as applied" to Tyler. Of course, that Congress could have more precisely drafted a criminal statute does not render the statute unconstitutional. United States v. Powell, 423 U.S. 87, 94 (1975).

Unlawful conduct that obstructed her giving testimony was directly proscribed by S 1512. The jury was charged that to convict Tyler, they would have to find (1) he killed or attempted to kill Doreen Proctor; (2) he was motivated by a desire to prevent her from communicating with a law enforcement officer about a federal offense; and (3) the officers with whom Tyler believed Proctor might communicate were federal officers. These instructions complied with the elements of the statute. The defendant need not know the law enforcement officers in the proceeding are federally connected. Bell, 113 F.3d at 1348 ("While the statute thus limits its reach to tampering that affects a federal proceeding or investigation, it expressly does not require that the defendant know or intend anything with respect to this federal character."); United States v. Porter, 977 F. Supp. 679, 681 (M.D. Pa. 1997). The government proved Tyler's conduct constituted a federal crime and that Tyler communicated with federal officers. Therefore, it met the requirements for conviction under S 1512. Tyler's vagueness challenge lacks merit.

B.

Tyler contends 18 U.S.C. S 1512 exceeds Congress's scope of authority under the Necessary and Proper Clause, Article I, Section 8, Clause 18 of the United States Constitution.7 Specifically, Tyler claims the statute permits convictions when no federal interest is implicated, i.e., when no federal proceeding is contemplated and when a victim did not intend to cooperate with a federal officer. We disagree.

Section 1512 is consistent with Congress's "necessary and proper" power to regulate the dispensation of justice in federal courts. Congress retains authority to "create, define, and punish, crimes and offenses, whenever they shall deem it necessary and proper by law to do so, for effectuating the

---

7. The Necessary and Proper Clause empowers Congress "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. CONST. art. I, S 8, cl. 18.

objects of the Government." United States v. Worrall, 2 U.S. (1 Dall.) 384 (1798).8 The Court of Appeals for the Ninth Circuit employed this rationale to find a similar obstruction-of-justice statute constitutional. Catrino v. United States, 176 F.2d 884, 887 (9th Cir. 1949) ("The . . . statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted . . . .").9 Many provisions in the first federal crimes act, including ones relating to perjury and bribery,"were plainly necessary and proper to the operation of the federal courts." DAVID P. CURRIE, THE CONSTITUTION IN CONGRESS: THE

FEDERALIST PERIOD, 1789-1801, at 96-97 (1997).
_____

8. The parties did not address whether the Clause itself, or some other constitutional provision undergirding the Clause, is the constitutional justification for 18 U.S.C. S 1512. But on either basis the statute is constitutional. The Necessary and Proper Clause has served as the textual source for criminal laws dating to the time of M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819). In that case, Chief Justice Marshall declared constitutional "the punishment of the crimes of stealing or falsifying a record or process of a court of the United States,
or of perjury in such court," laws the Court found "certainly conducive to the due administration of justice." Id. at 417. Alternatively, the Witness Tampering Act could be seen as a manifestation of Congress's constitutional authority to carry out its enumerated powers, including the creation of "[t]ribunals inferior to the[S]upreme Court." U.S. CONST. art. I, S 8, cl. 9. Congress began legislating in this area with the Judiciary Act of 1789, Act of Sept. 24, 1789, ch. 20, 1 Stat. 73, and its authority has not been called into doubt. See Hanna v. Plumer, 380 U.S. 460, 472 (1965) (Congress has "power to make rules governing the practice and pleading" in federal courts); Sibbach v. Wilson & Co., 312 U.S. 1, 9 (1941) ("Congress has undoubted power to regulate the practice and procedure of federal courts."); see also Cohens v. Virginia, 19 U.S. (6
Wheat.) 264 (1824) ("Congress is not a local legislature . . . . The American people thought it a necessary power . . . . Being so conferred, it carries with it all those incidental powers which are necessary to its complete and effectual execution.").

9. Because the Constitution enumerates so few criminal proscriptions, "almost the entirety of the federal criminal justice system is built upon a Necessary and Proper Clause foundation." Evan H. Caminker, "Appropriate" Means-Ends Constraints on Section 5 Powers, 53 STAN. L. REV. 1127, 1140 (2001).

Printz v. United States, 521 U.S. 898 (1997), on which Tyler relies, does not support the argument thatS 1512 is unconstitutional. In Printz, the Supreme Court declared that portions of the Brady Handgun Law requiring state officers to conduct federally mandated background checks violated principles of state sovereignty. Id. at 923–24. In contrast, S 1512 implicates no principles of state sovereignty, focusing instead on private conduct substantially affecting federal law enforcement. The statute, like other federal criminal statutes found constitutional, "involve[s] an assertion of authority, duly guarded, auxiliary to incontestable national power." Greenwood v. United States, 350 U.S. 366, 375 (1956).10

C.

Citing United States v. X–Citement Video, Inc. , 513 U.S. 64 (1994), Tyler contends S 1512 violates the Due Process Clause of the Fifth Amendment by relieving the government's burden of proving scienter. Sections 1512(e)(1), 1512(f)(1), and 1512(f)(2), according to Tyler, unconstitutionally permitted conviction even if the government failed to prove he interfered with a federal proceeding, intended to affect a federal proceeding, or intended to prevent communication to a federally authorized law enforcement officer. We disagree.

As stated, we have upheld S 1512's scienter requirements. Bell, 113 F.3d at 1351 ("the government need not prove any state of mind on the part of the defendant with respect to the federal character of the proceeding or law–enforcement–officer communication that it alleges [the defendant] intended to interfere with or prevent"). In X–Citement Video, the Supreme Court considered a situation in which a statute criminalizes "otherwise innocent conduct." 513 U.S. at 72–73. In that context, the Court found scienter requirements should be applied broadly. Id.11

_____

10. We likewise dismiss Tyler's "alternative" contention that the statute is constitutional as applied only to conduct with a"substantial" effect on a federal officer or proceeding. Tyler's conduct meets even this putative test.
11. "Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not, but does not require knowledge of the precise consequences that may flow from that act once aware that the act is wrong." Id. at 73 n.3.

11

Tyler cannot reasonably allege his participation in the intimidation and murder of Doreen Proctor was "otherwise innocent." There is no constitutional rationale for applying scienter requirements to S 1512(e), S 1512(f)(1), and S 1512(f)(2). Congress plainly intended to omit a state-of-mind requirement with regard to the federal connection. We see no constitutional infirmity here.

V.

Tyler contends the District Court violated his Fourth, Fifth, and Sixth Amendment rights by admitting into evidence a letter written to his state court judge in anticipation of sentencing. Before resting its case, the government read parts of it into the record. Thereafter, Tyler's attorney read different portions of his letter into the record -- those describing Tyler's personal background. Both counsel referred to the letter in closing arguments.

We exercise plenary review over alleged constitutional errors. United States v. Leggett, 162 F.3d 237, 245 (3d Cir. 1998).

A.

Tyler contends the government obtained his letter in violation of the Fourth Amendment. Tyler claims he had a "legitimate expectation of privacy," violated by the government's "seizing" the presentence letter without a warrant or court order. But Tyler had no reasonable expectation of privacy in a letter he voluntarily drafted for his state court judge.

After a request from the federal prosecutor, Tyler's state sentencing judge turned over the letter on March 22, 2000. The court order states the letter is to be delivered"for purposes of a handwriting analysis." No further explanation was given. But the Assistant United States Attorney testified he "requested and received permission" from the judge "to take possession of the original letter for fingerprinting, handwriting analysis, and use at the retrial of Willie Tyler." A letter bearing Tyler's signature would require authentication before use at trial.

12

Tyler could not reasonably expect a cloak of confidentiality. He knew the letter would be considered by the state court judge in sentencing, an open proceeding. Nothing prevented the sentencing judge from referring to the letter's contents from the bench. Furthermore, Tyler desired its consideration. He had no reasonable expectation that the letter would not become public. Therefore, we find no search or seizure by the government in requesting and receiving the letter.12 Regardless, Tyler consented to any "search" or "seizure." We reject Tyler's Fourth Amendment claim.

B.

Tyler contends he wrote the letter without knowing it could be used against him in future proceedings, violating his Fifth Amendment right against self-incrimination. Citing Estelle v. Smith, 451 U.S. 454, 469-71 (1981), Tyler contends at least he should have been advised of his Miranda rights before writing his letter.

The District Court found that Tyler knew of his Fifth Amendment rights before voluntarily writing his state sentencing judge. The Fifth Amendment right against self-incrimination must be claimed when self-incrimination is threatened. Ordinarily, it cannot be reserved for future constitutional battles. Minnesota v. Murphy, 465 U.S. 420, 427-28 (1984) (observing an individual may lose the benefit of the privilege even absent a knowing waiver). As the Supreme Court noted in Murphy, "a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." Id. at 429. Tyler voluntarily chose to provide information he believed would benefit him at sentencing. Therefore, assuming a Fifth Amendment privilege existed, Tyler waived and forfeited its benefits.

_____

12. Nor did the prosecution's reading the letter constitute a "search" or "seizure." Accord United States v. Snowadzki, 723 F.2d 1427, 1430 (9th Cir. 1984) ("The courts have never indicated that the government conducts a `search' by reading documents in its possession.").

13

Of course, the general rule prohibiting Tyler from reserving his Fifth Amendment right against self-incrimination would not apply to statements obtained through "inherently coercive custodial interrogations," if there was "some identifiable factor [denying] the individual a free choice to admit, to deny, or to refuse to answer." Id. at 429. Although Tyler composed his letter in custody, there was no "inherently coercive custodial interrogation." The District Court found:

> First . . . Tyler knew about his Fifth Amendment rights before the interview. Second, he does not assert that he was compelled to participate. Indeed, he was advised that the letter was voluntary and could focus on anything he wanted to say, not necessarily the crime. Third, the probation officer is not a police officer. He does not interrogate; he gathers information for the court's sentencing decision. Additionally, Tyler does not aver that he would have been penalized if he did not write the letter.

Tyler, No. 96-106, at 16-17. Nor was the letter a response to interrogation. Put simply, there was no interrogation under the Fifth Amendment. We have never held a probation officer must administer Miranda warnings before conducting presentence interviews. See United States v. Frierson, 945 F.2d 650, 660 n.5 (3d Cir. 1991) (observing this position is consistent with those in other circuits).

Tyler also contends the probation office's disclosure of his letter to federal prosecutors violated the Fifth Amendment. Claiming the nature of his presentence "interview" had changed, exposing him to future federal prosecution, Tyler maintains he should have been warned his letter could be used against him. But there is no evidence the probation officer believed the letter might some day be used in a future federal proceeding. The probation officer had no obligation to provide Miranda warnings to Tyler solely because of the possibility of federal prosecution. See Frierson, 945 F.2d at 662 (contrasting cases in which defendants voluntarily respond to questions, "deny[ing] a portion of criminal conduct that the court found to have taken place," with those in which defendants "consistently rel[y] on [their] privilege[s] when questioned about related

14

conduct beyond the offense of conviction").13 Moreover, as previously stated, the Fifth Amendment does not apply to the facts here, where Tyler voluntarily submitted a letter as part of a presentence interview by a probation officer. We reject both of Tyler's contentions based on alleged Fifth Amendment violations.

C.

Tyler suggests the probation officer violated his Sixth Amendment right to counsel by failing to notify his state court attorney when it invited him to write his sentencing judge. As noted, Tyler voluntarily wrote his state court judge, hoping to reduce his impending sentence. 14 Tyler's decision to contact his judge was entirely elective, and for purposes of the Sixth Amendment, the probation office did not need to inform Tyler's state court counsel.

Though not dispositive, we also observe no court has found the Sixth Amendment right to counsel applies to routine presentence interviews. E.g., Castro v. Ward, 138 F.3d 810, 821–22 (10th Cir. 1998) (no Sixth Amendment violation where a convicted murderer voluntarily offered an inculpatory statement after receiving his Miranda rights); United States v. Washington, 11 F.3d 1510, 1517 (10th Cir. 1993) ("Routine presentence interviews generally do not require Miranda warnings, even if the defendant is in custody facing serious punishment."); United States v. Tisdale, 952 F.2d 934, 939–40 (6th Cir. 1992) ("Because the

_____

13. We also reject Tyler's argument that after Mitchell v. United States, 526 U.S. 314, 328–29 (1999), decisions refusing to find the Fifth Amendment applies in the context of presentence interviews "should be reconsidered." Mitchell held a sentencing court could not draw adverse inferences from a convict's silence in determining facts related to the crime. Id. That situation is quite removed from one in which a convict voluntarily provides the sentencing judge with information. The Fifth Amendment provides "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Even the most generous interpretation of "compelled" testimony would not include Tyler's presentence letter.

14. The record does not indicate Tyler requested and was denied the assistance of counsel in drafting the letter.

15

probation officer does not act on behalf of the prosecution . . . a presentence interview in a non-capital case is not a `critical stage' . . . ."); United States v. Hicks, 948 F.2d 877, 885-86 (4th Cir. 1991) (sentencing judges exercise "independent discretion and judgment in determining a defendant's sentence" and the denial of counsel in this context is "constitutionally insignificant"); Baumann v. United States, 692 F.2d 565, 578 (9th Cir. 1982) (presentence interview not a "critical stage" given the sentencing judge's "wide discretion" in sentencing);15 United States v. Woods, 907 F.2d 1540, 1543 (5th Cir. 1990) (same); United States v. Jackson, 886 F.2d 838, 844-45 (7th Cir. 1989) (same).

The Sixth Amendment does not apply in this case. Tyler voluntarily participated in the presentence investigation. Furthermore, there is no evidence that Tyler's counsel was excluded from the presentence process or that Tyler was forced to proceed without assistance of counsel. The Court of Appeals for the Second Circuit's rationale in United States v. Colon, 905 F.2d 580, 588 (2d Cir. 1990), is instructive:

> Counsel was surely aware that [the defendant] had to be interviewed before sentencing, and counsel made no objection. He was also aware at sentencing of the damaging admissions made by [the defendant] in the interview and still raised no [Sixth Amendment] objection. Even if we assume that it was error for the court to receive the statements, the error was not so "plain" that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.16

_____

15. In United States v. Herrera-Figueroa, 918 F.2d 1430, 1433 (9th Cir. 1990), the Court of Appeals for the Ninth Circuit reserved the question of whether after the imposition of the federal Sentencing Guidelines, the presentence interview represented a "critical stage" in federal courts given the reduced discretion in sentencing. The court held probation officers must permit defendants, if they request, to have attorneys present at such interviews as "an exercise of our supervisory power over the orderly administration of justice in the Ninth Circuit." Id.

16. Though this case concerns Tyler's letter, not his presentence interview, the rationale in Colon remains persuasive. Because a

16

We also reject Tyler's analogy between his letter and a pretrial psychiatric interview. The Supreme Court declared the latter a "critical stage" of criminal proceedings, directly implicating the accused's Sixth Amendment rights. Estelle, 451 U.S. at 469–71. But as the Court of Appeals for the Ninth Circuit held, Estelle's holding is properly limited to its facts, where the state neither informs defense counsel of its mental examination of the defendant during capital murder proceedings nor allows the defendant assistance of counsel. Baumann, 692 F.2d at 577–78 (contrasting "critical" determinations in capital-case mental examinations with usual sentencing phases). As in Baumann, and unlike in Estelle, Tyler's state court sentencing judge did not need to find aggravating factors beyond a reasonable doubt. Id. at 576. Tyler's written submission was a lawful practice in Pennsylvania, providing information the sentencing court, at its discretion, could consider when imposing sentence. The Sixth Amendment does not attach to this voluntary practice.[17]

Nor did federal prosecutors obtain the letter in violation of Tyler's Sixth Amendment right to counsel. The Sixth Amendment is ordinarily "offense specific." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). Although Sixth Amendment guarantees may apply to uncharged crimes factually related to charged offenses, Texas v. Cobb, 532 U.S. 162 (2001) (citing Blockburger v. United States, 284 U.S. 299 (1932)),[18] we do not find the Sixth Amendment barred use of Tyler's letter at his later federal trial.

_____

sentencing judge may constitutionally question a convicted defendant appearing without counsel before sentencing, so can the judge consider a letter submitted voluntarily by the convicted defendant without violating the Sixth Amendment, even if the letter is sent without counsel's knowledge.

17. For the reasons stated, we also reject Tyler's passing argument, presented in a footnote, that the United States violated his "additional" right to counsel found in the Fifth Amendment and based on the right against self-incrimination.

18. On April 2, 2001, three days after Tyler submitted his briefs, the Supreme Court issued the Cobb opinion, which abrogated our holding in United States v. Arnold, 106 F.3d 37 (3d Cir. 1997). Arnold had established a limited exception to the offense-specific rule where two prosecutions are "closely related." We will employ the "factually related" language and analysis from Cobb in our resolution of Tyler's appeal.

17

As noted, Tyler's Sixth Amendment rights were not violated by the probation officer's solicitation or receipt of the letter. Had the events giving rise to Tyler's state and federal trials met the Blockburger test, 19 Tyler's Sixth Amendment rights never attached in the first instance. We also find unpersuasive Tyler's suggestion that the presentence investigation was the "halfway point" between successive state and federal prosecutions. As the District Court found, the government had not initiated its prosecution of Tyler when he wrote the letter. Tyler, No. 96-106, at 13. Almost three years passed between Tyler's drafting his presentence letter and his first federal indictment. This interlude demonstrates the probation office acted as a neutral factfinder for Tyler's state sentencing judge, not as an agent for federal prosecutors. Accord Jackson, 886 F.2d at 844 ("The probation officer does not have an adversarial role in the sentencing proceedings. . . . [T]he probation officer serves as a neutral information gatherer for the sentencing judge."). 20 We reject both of Tyler's Sixth Amendment claims.

D.

Tyler contends the presentence statement was provided by the probation office to the Pennsylvania State Police in violation of his rights to confidentiality and privacy. We have already rejected Tyler's constitutional claims in this context. We will not consider the application of state law -- specifically S 9733 of the Pennsylvania Judicial Code21 -- where no federal constitutional principles are implicated. Having rejected Tyler's constitutional arguments regarding

_____

19. In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Id. at 304. At least arguably, the same standards that would have convicted Tyler in state court would result in a federal court conviction.

20. This language from Jackson concerned federal probation officers, but the rationale relating to the role of state probation officers is the same.

21. 42 PA. CONS. STAT. ANN. S 9733 (West 2001).

18

the use of his letter in the federal proceeding, no further federal issues relating to the letter remain. On the facts here, we will not supervise the state courts' application of state law.

VI.

Tyler also challenges several District Court trial rulings.

A.

Tyler contends certain statements made at trial by Carlisle Detective David Fones were inadmissible hearsay. Fones testified that Doreen Proctor, while working undercover for the Tri-County Drug Force, told him Tyler's brother David had traveled outside of Pennsylvania to obtain drugs, providing statutory jurisdiction for prosecuting Willie Tyler and David Tyler for federal witness tampering. We review for abuse of discretion. United States v. Saada, 212 F.3d 210, 220 (3d Cir. 2000).

The statements were offered only to demonstrate that federal officials had jurisdiction to initiate a federal drug investigation. The hearsay rule excludes "verbal acts," statements which themselves "affect[ ] the legal rights of the parties or [are] circumstance[s] bearing on conduct affecting their rights." FED. R. EVID. 801(c) advisory committee's note. In this sense, the veracity of Proctor's statement to Fones was irrelevant. Even if David Tyler did not actually operate his drug business outside of Pennsylvania, as Proctor indicated, Proctor's statement provided a jurisdictional basis for initiating a federal investigation into Tyler's activities. As such, the statements were not hearsay. Cf. Kulick v. Pocono Downs Racing Ass'n, Inc., 816 F.2d 895, 897 n.3 (3d Cir. 1987) (testimony of track president's statement not hearsay where not offered to prove truth of its assertions but simply to demonstrate state action). The District Court properly allowed the testimony.

B.

Tyler contends the government, at closing argument, impermissibly referred to evidence outside the record,

19

specifically the trials of Ronique Bell and David Tyler. We see no error.22 With respect to the prosecution's references to Bell's trial, Tyler's counsel invited those references on cross-examination by asking questions of Laura Mae Barrett about her involvement in Bell's federal trial. Regardless, the District Court properly instructed the jury:

> What may have been said or happened in other cases is not evidence that you can consider against Mr. Tyler. You must rely on the evidence and only the evidence that you heard in this courtroom in determining the guilt or innocence of Mr. Tyler, and you should not be -- you should not credit or use as a factual -- as a basis for finding any facts what might have occurred in another case involving other parties.

Tyler's counsel expressed satisfaction with the instruction.

Moreover, the record contained several references to Willie Tyler's participation in his brother's drug trade. Ronique Bell's involvement in David Tyler's drug trade also provided Bell a motive to murder Proctor. Bell, 113 F.3d at 1350. Whether or not Willie Tyler sold narcotics himself, the evidence demonstrated he faced federal prosecution for Proctor's murder. The District Court, at Tyler's request, properly instructed the jury:

> First of all, I want to emphasize that this case is not about selling narcotics, and there has been no contention and there is no evidence that Mr. Tyler was engaged in the sale of narcotics. So if that got into this case in any way, the government is not arguing that that occurred at all . . . .

Tyler's counsel expressed satisfaction with the instruction. We see no error.

_____

22. The record is ambiguous regarding the objections made by Tyler's attorney during the prosecutor's closing argument. Tyler's attorney seems to have objected to a reference to Bell's trial. She did not object to the mention of Willie Tyler's trial. But earlier in the prosecutor's closing argument, the District Court granted Tyler's attorney a "continuing objection" to the prosecutor's argument and asked Tyler's attorney "not to interrupt" further. Given the District Court's instruction, we will review statements made by the prosecutor for error, not plain error.

20

C.

Tyler contends the evidence was insufficient to prove Doreen Proctor would communicate with a federal law enforcement officer. Reviewing a claim of insufficiency, we "view the evidence in the light most favorable to the government and must sustain a jury's verdict if`a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offenses.' " United States v. Rosario, 118 F.3d 160, 163 (3d Cir. 1997) (quoting United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991)). Tyler cannot meet this "heavy burden." Id.

The evidence showed Ronald Diller, who coordinated the Tri-County Drug Force, served the federal government as a "law enforcement officer" under 18 U.S.C.S 1515(a)(4).23 Diller "would advise and consult" with the federal Drug Enforcement Agency (DEA) "on a regular basis," and he had authority to develop cases. Indeed, Diller intended to refer Doreen Proctor to the DEA as a potential federal witness. The government need not have demonstrated Tyler believed Proctor would communicate with persons whom Tyler "knew or believed to be federal officers." Bell, 113 F.3d at 1349. Section 1512 requires "proof that the officers with whom the defendant believed the victim might communicate would in fact be federal officers." Id. Viewing the evidence in the light most favorable to the government, we reject Tyler's contention.

D.

Tyler suggests the District Court violated his constitutional right to confront witnesses by admitting testimony from Laura May Barrett that she heard Ronique Bell say to Tyler, "I shot Doreen, but you killed her." At trial, Tyler's counsel objected to this statement on reliability grounds but conceded it was otherwise admissible under

_____

23. That statute provides, "[T]he term`law enforcement officer' means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant . . . ."

the co-conspirator exception to the hearsay rule. 24 On appeal, Tyler raises Confrontation Clause concerns about the statement for the first time. The failure to object on those grounds at trial means the Confrontation Clause issue was not preserved for appeal. United States v. Gibbs, 739 F.2d 838, 847-50 (3d Cir. 1984) (en banc) (rejecting analogous arguments -- that the government failed to demonstrate the reliability of a co-conspirator's statement or the unavailability of the declarant -- where no objection was made at trial). As in Gibbs, the absence of evidence to show Bell's "unavailability" to testify is attributable to Tyler's failure to put the government on notice of its necessity. Id.

Given Tyler's failure to object, we review only for plain error. See United States v. Olano, 507 U.S. 725, 734 (1993) (plain error must be "obvious" and have "affected the outcome of the district court proceedings"). We do not find the statement resulted in a "miscarriage of justice" or was otherwise "highly prejudicial." Virgin Islands v. Charleswell, 24 F.3d 571, 576 (3d Cir. 1994). Provided an out-of-court statement qualifies under Rule 801(d)(2)(E), the Confrontation Clause does not require the proponent of the statement to prove the declarant is unavailable. United States v. Inadi, 475 U.S. 387, 399-400 (1986). 25 And in

_____

24. Fed. R. Evid. 801(d)(2)(E) provides in part,"A statement is not hearsay if . . . [it] is offered against a party and is . . . a statement by
a co-conspirator of a party during the course and in furtherance of the conspiracy."

25. In Ohio v. Roberts, 448 U.S. 56 (1980), the Supreme Court said the "general approach" required the government to demonstrate the unavailability of the declarant whose statement the government wished to use against the defendant. Id. at 65. Six years later, Inadi clarified that Roberts does not stand for a blanket proposition that "no out-of-court statement can be introduced . . . without a showing that the declarant is unavailable." 475 U.S. at 394. Specifically, the Inadi Court found the Confrontation Clause does not require a showing of unavailability as a prerequisite to the admission of a co-conspirator's statement under Rule 801(d)(2)(E). Id. at 399-400. Tyler contends Idaho v. Wright, 497 U.S. 805 (1990), re-established that the government must demonstrate unavailability in such circumstances. But Idaho did not explicitly overrule Inadi; indeed, Idaho cited Inadi's holding. Id. at 815.

22

Bourjaily v. United States, 483 U.S. 171 (1987), the Supreme Court held the co-conspirator exception is"firmly rooted in our jurisprudence" so that a court"need not independently inquire into the reliability of such statements." Id. at 483. Therefore, the District Court need not have independently analyzed the reliability of Barrett's statement. We see no plain error.

E.

Tyler challenges the District Court's failure to conduct a charge conference under Fed. R. Crim. P. 30. But there is no error if the defense made specific objections to the charge or the failure to charge on particular points. United States v. Pelullo, 964 F.2d 193, 220-21 (3d Cir. 1992). The District Court heard objections outside the jury's hearing. The Court gave additional instructions requested by counsel. Tyler's counsel expressed satisfaction with the final instructions to the jury. We see no error.

The government did not misstate the law in closing argument by using the phrase "potential federal witness," which was consistent with the District Court's instructions and was clarified in response to a jury inquiry. Nor did the prosecutor's comment regarding Tyler's response to the Bell accusation constitute reversible error, as the evidence showed Tyler responded with an admonition to remain silent.[26]

_____

Moreover, Idaho did not concern the statement of a co-conspirator, but the statement of a three-year-old. Id. at 810-12. Under the current formulation of the Rules of Evidence, "unavailability" is only required if the particular hearsay exception requires it. White v. Illinois, 502 U.S. 346, 356-57 (1992); see also 2 MCCORMICK ON EVIDENCES 246, at 124 (John W. Strong ed., 5th ed. 1999). Rule 801(d)(2)(E) contains no such requirement.

26. Furthermore, our review of the record demonstrates there was sufficient evidence to convict Tyler absent the letter, rendering its admission, at most, harmless error. A non-constitutional error committed at trial does not warrant reversal in circumstances where "it is highly probable that the error did not contribute to the judgment." United States v. Helbling, 209 F.3d 226, 241 (3d Cir. 2000). We may be

23

VII.

For the foregoing reasons we will affirm the judgment of conviction and sentence.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

_____

firmly convinced that the alleged error was "harmless" without disproving every "reasonable possibility" of prejudice, United States v. Jannotti, 729
F.2d 213, 220 n.2 (3d Cir. 1984), and we may affirm on any ground supported by the record, Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000) (en banc). The testimonial evidence against Tyler was sufficient to convict him of intimidating and killing Doreen Proctor, conspiring to tamper with a witness, and using a firearm during the commission of a crime of violence.

24