**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2483
_____

UNITED STATES OF AMERICA

v.

ANTOINE PARIS DAVIS,
                                        Appellant
_____

On Appeal from the District Court
for the Middle District of Pennsylvania
(M.D. Pa. Crim. No. 4-16-cr-00006-002)
District Judge: Honorable Matthew W. Brann

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 15, 2018

Before: JORDAN, SHWARTZ, and KRAUSE, *Circuit Judges*

(Opinion filed: March 26, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Antoine Davis appeals his convictions for conspiracy to possess with intent to distribute and to distribute heroin and cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1), arguing the District Court erred in excluding certain impeachment evidence. For the reasons set forth below, we will affirm.

## I.    Background

This prosecution arose from three separate undercover cocaine purchases by Pennsylvania State Police from Raheem Ruley—Davis's co-conspirator and co-defendant at trial—and the execution of a search warrant on Ruley and Davis's residence.  Inside the house, the police discovered a safe bolted to the floor of a closet containing heroin, cocaine, and drug packaging equipment such as black rubber bands, a straw, a razor blade, and a digital scale.  Some of the heroin was packaged into 136 small multi-folded Ziploc bags, with black rubber bands wrapped around every ten bags.  In a kitchen drawer, the police found Ruley's wallet and $380 in cash, alongside bags of crack cocaine and vials of marijuana.  And in Davis's bedroom, they found another safe, this one containing over $1,000 in cash, five cell phones, and another bag of cocaine.  Of the cash seized from the house, $160 came from the pre-recorded marked bills that law enforcement had used to buy cocaine from Ruley.  In total, law enforcement seized from the house approximately 133 grams of heroin and 95 grams of cocaine.

At trial, in addition to that evidence, the jury was shown a series of text-message exchanges on one of the cell phones seized from Davis's safe, establishing that Davis had offered others "fire" (a street term for heroin) and "balls" (cocaine). D. Ct. Dkt. 173, at 63, 73–74. Likewise, records for that same phone showed that Davis had exchanged many calls and text messages with the same number the police had used to arrange their undercover cocaine buys from Ruley and that he had done so around the same time as those buys. Multiple witnesses testified they had bought cocaine from Davis, with one saying Davis had told him heroin was also "available." D. Ct. Dkt. 172, at 169.

Still another witness, Dana Rockwell, testified to having actually purchased heroin from Davis several times. Rockwell typically bought from Davis a "normal amount" of heroin—$400 worth, or "50 bags." App. 92. According to Rockwell, Davis usually sold heroin in single-folded bags. When defense counsel showed Rockwell a photograph of single-folded bags during cross-examination, she testified: "They are the same baggies. Sometimes it was different than that. Sometimes it was the same." App. 95. However, when she was shown a photograph of multi-folded bags, she characterized them as "different." App. 95.

Davis's counsel then subpoenaed Pennsylvania State Trooper Havens, who, around the same time other investigators had seized heroin from Davis's house, had conducted a sting unrelated to this case that led to a separate seizure of heroin. Davis's counsel intended to show that the heroin from the two seizures had been improperly "intermingled" and, thus, some heroin was "wrongfully attributed" to Davis. App. 133.

3

The District Court quashed the subpoena, finding Davis had not established a sufficient basis for his allegation of intermingling and concluding the subpoena "raise[d] serious concerns under Federal Rule of Evidence 403," because "the risk of prejudice and of misleading the jury [wa]s exceptionally high." App. 145–46. Davis's counsel also sought to admit into evidence the photograph of the single-folded bags of heroin that Rockwell had said resembled the bags she regularly bought from Davis, explaining that he sought to clarify for the jury that the photograph actually depicted heroin from Trooper Havens's unrelated seizure and not heroin found in his house. The District Court granted the Government's objection to admitting the photograph, reasoning that it likewise would "confuse the jury" and be "contrary to" the decision to quash the subpoena for Trooper Havens. App. 148.

At the conclusion of trial, the jury found Davis guilty of both the conspiracy and possession counts. In response to special interrogatories, the jury also determined that the weight of all such substances containing heroin exceeded 100 grams. The District Court then sentenced Davis to 144 months in prison, and Davis filed this timely appeal.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review a District Court's decision to exclude evidence for abuse of discretion. *United States v. Stimler*, 864 F.3d 253, 269 (3d Cir. 2017).

4

**III.    Discussion**

On appeal, Davis contends the District Court abused its discretion in quashing his subpoena for Trooper Havens and in excluding from evidence the photograph of heroin from the unrelated case.  Specifically, he argues this evidence was necessary to impeach Rockwell, the "only trial witness who connected Davis to heroin sales[] [and] to the heroin found in [the closet] safe."  Appellant's Br. 16.  We conclude, however, that even if these rulings constituted error, such error was harmless.

A non-constitutional trial error, such as the improper exclusion of evidence, will not justify reversing a conviction if the error was harmless, i.e., if it is "highly probable that the error did not contribute to the judgment."  *United States v. Brown*, 765 F.3d 278, 295 (3d Cir. 2014).  "While the Government bears the burden of showing that the error was harmless, we can affirm for any reason supported by the record," *United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) (citation omitted), and we may conclude an error was harmless "without disproving every 'reasonable possibility' of prejudice," *United States v. Tyler*, 281 F.3d 84, 101 n.26 (3d Cir. 2002) (citation omitted).

Here, the evidence connecting Davis to illegal drug trading was overwhelming. Heroin aside, investigators seized cocaine from both the safe in his bedroom and the one in the closet and found in his house $160 in the marked bills that had been used in the undercover buys from Ruley.[1]  Multiple witnesses testified that Davis sold them cocaine,

---

[1] While Davis argues the Government "could not establish a link between the Ruley buy money and the cash seized from Davis," Appellant's Br. 16, it is undisputed

5

and records from his cell phone reflected both sales of cocaine and contemporaneous communications with the same number that law enforcement had been using to arrange the cocaine purchases from Ruley. There also was significant evidence establishing Davis's involvement in selling heroin. Not only were 133 grams of heroin found in his house, with some of it packaged for street sales, but his phone records also showed him offering to sell heroin ("fire," as he put it), D. Ct. Dkt. 173, at 63, and a witness at trial confirmed Davis had made clear to him that heroin was "available" for sale, D. Ct. Dkt. 172, at 169. Based on the strength of the evidence alone, it is "highly probable" that the exclusion of the Rockwell impeachment evidence—even if it was error—"did not contribute to the judgment." *Brown*, 765 F.3d at 295.

The nature and context of the impeachment evidence only reinforces that conclusion. The discrepancy that defense counsel sought to highlight in Rockwell's testimony concerned the type of heroin bags she bought from Davis, but that would not undermine Rockwell's testimony that Davis regularly sold her heroin, or that the single-folded bags of heroin appearing in the photograph—even if the photograph depicted heroin seized in the unrelated case—were the "same" type of bags she "[s]ometimes" bought from Davis. App. 95.

That is, the central relevance of Rockwell's testimony was not to link Davis to the specific heroin in the photograph but to show that he "offered heroin to [his] customers

that the marked bills were seized from the house where Davis resided with Ruley.

and regularly had supplies available for sale," Appellee's Br. 25. The photograph served as a basis only for her testimony regarding how that heroin was occasionally packaged. The source of the bags in the photograph was thus beside the point and would have done nothing to disturb Rockwell's testimony about buying heroin from Davis on multiple occasions and "[s]ometimes" in single-folded bags like those depicted in the photograph. App. 95.

In sum, given the weak impeachment value of this evidence and the powerful and uncontroverted evidence of Davis's drug trafficking, any error in excluding Trooper Havens's testimony and the photograph that defense counsel showed Rockwell was harmless and Davis's convictions will therefore be affirmed.